## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2015, 9:53 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT S.D.

Kristin R. Willadsen
Public Defender's Office
Muncie, Indiana

ATTORNEY FOR APPELLANT W.P., SR.

Ana M. Quirk
Public Defender
Quirk & Hunter, PC
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

David Dickmeyer
Graduate Law Clerk
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of W.P., Jr., Minor Child, and W.P., Sr., Father and S.D., Mother:

S.D. and W.P.

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

April 8, 2015

Court of Appeals Case No. 18A02-1406-JT-422

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge, and The Honorable Brian M. Pierce, Magistrate

Cause No. 18C02-1301-JT-1

**Kirsch, Judge.**

[1] W.P., Sr. ("Father") and S.D. ("Mother") each appeal the juvenile court's order terminating their parent-child relationship with W.P., Jr. ("Child") and raise the following consolidated and restated issue: whether sufficient evidence was presented to support the termination of their parental rights.

[2] We affirm.

## Facts and Procedural History

[3] In July 2011, police responded to a domestic violence call at parents' residence. When police arrived, Father emerged from the residence holding Child (then three months old) by the back of the neck, using him as a shield. Father threatened to shoot police and would not release Child. Ultimately, Child had to be pried from Father's hands. Both parents were intoxicated, and Father was arrested. A medical examination revealed Child had four fractured ribs. The Child's ribs were in two different stages of healing indicating two separate injuries. DCS removed Child from the home and filed a Child in Need of Services ("CHINS") petition.

[4] Mother admitted to the allegations in the CHINS petition, and Child was adjudicated a CHINS. On August 6, 2011, Mother began seeing an addictions counselor. On September 22, 2011, the trial court issued its dispositional order. The court suspended Father's visitation rights and ordered reunification services and requirements for both parents, including that they keep all appointments, secure and maintain stable and legal income, refrain from illegal controlled

substances and alcohol, submit to random drug and alcohol screens, participate in a treatment group (such as Alcoholics Anonymous), and begin counseling. In October 2011, DCS filed a modification report and requested a no-contact order between Mother and Father, which was granted the following week.

[5] Mother began meeting with her addictions counselor but failed her drug screening on two separate occasions. She also began an intensive outpatient program ("IOP"), but left the program due to an inability to pay. Mother then began a second IOP, this time paid for by DCS. During this IOP, Mother failed a third drug screen.

[6] Several months later, Mother resumed her work with the addictions counselor, but the addictions counselor terminated his services due to Mother's dishonesty. Between the filing of the CHINS petition and the order terminating her parent-child relationship, Mother tested positive for cocaine twenty times and Mother failed to find employment.

[7] Meanwhile, Father pleaded guilty to domestic battery and resisting law enforcement. He was released from incarceration in May, 2012. Following his release, Father was placed on and successfully completed probation. During this time, Father was diagnosed with alcohol dependence and Father began meeting with an addictions counselor, but missed a number of a scheduled appointments and failed to attend Alcoholics Anonymous. Because of Father's lack of progress, the counselor terminated the sessions with Father.

[8] During this time, Father was also referred to a therapist, but missed a number of his scheduled appointments. Pursuant to a DCS request, the trial court modified the CHINS dispositional order to allow Father to begin visitation with Child if he was able to comply with his requirements for at least thirty days, but Father never did comply for at least thirty days and was never allowed visitation.

[9] In January 2013, DCS filed its termination petition. Following an evidentiary hearing, the juvenile court issued an order terminating both parents' parent-child relationship with Child. The court found as follows:

> 6. Neither [Mother] nor [Father] have demonstrated any substantive progress in reunification services and have demonstrated a pattern of resisting reunification efforts.
>
> 7. [Mother] has continually tested positive for cocaine throughout the course of the . . . case . . . and has tested positive for cocaine while this termination case has been pending.
>
> 8. DCS arranged for [Mother] to receive in-patient drug treatment and she refused that treatment option. [Mother] stated that she did not attend in-patient drug treatment because she was fearful of losing her apartment (she receives assistance from the township Trustee for housing). However, [Mother] was sanction[ed] by the township Trustee and did not receive housing assistance for a period of three months. She was able to demonstrate a resourcefulness to keep her apartment during this three month sanction period.
>
> 9. [Mother] does not want to live a drug free lifestyle. [Mother's] continued positive drug screens (even while the termination case has been pending), her dishonesty with her substance abuse counselor[,] and her refusal to attend an in-patient drug treatment program all lead this court to conclude that [Mother] is not serious about addressing her drug use.
>
> 10. [Mother] participated in counseling, but demonstrated a pattern of dishonesty and a refusal to take any personal responsibility for her

situation. [Mother] was unable to make any progress [toward] addressing the pattern of domestically abusive relationships and poor personal choices concerning drug usage and employment.

11. [Mother] has no identifiable, legal source of income and has failed to obtain either employment or a stable source of income throughout these proceedings

12. [T]his court suspended [Father's] visitation on August 1, 2011 because of the child's injuries during the altercation which led to the child's removal. [Father] has demonstrated so little effort [toward] engaging in reunification services that this court has maintained a suspension of visitation throughout this case.

13. While [Father] did re-engage in counseling in 2014 and completed four sessions, prior to that he missed over 50 percent of his scheduled counseling sessions.

14. [Father] has demonstrated no desire to address his alcohol usage, which was a direct and contributing factor to the incident which resulted in the child's removal. A commitment to sobriety is one of the recommendations contained in [Father's] psychological evaluation.

15. [Father] has failed to engage in either case management services or to complete his substance abuse treatment.

16. [Father] has no identifiable, legal source of income and has failed to obtain either employment or a stable, legal source of income throughout these proceedings. . . .

. . . .

17. [Child's Court Appointed Special Advocate ("CASA")] agrees that it is in the best interest of the child to terminate the parental rights of [Mother] and [Father]. The CASA indicated that [Mother] has demonstrated a pattern of dishonesty throughout this case[,] and that [Father] takes no responsibility for his actions which resulted in [Child's] injuries and removal.

19. [B]ased on the foregoing, there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied.

20. [B]ased on the foregoing, there is a reasonable probability that the continuation of the parent/child relationship herein poses a threat to the well-being of the child.

21. Termination of the parent/child relationship is in the best interest of the child. . . .

. . . .

[10] Both Mother and Father now appeal.

## Discussion and Decision

[11] In reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of witnesses; we consider only the evidence and reasonable inferences therefrom that are most favorable to the judgment. *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.*

[12] At the termination hearing, Mother admitted that she continued to use drugs, failed to participate fully in treatment, and failed to locate and maintain stable income. *Tr.* at 103, 107, and 108. Mother's addictions counselor testified that Mother had failed numerous drug tests during the course of treatment and missed several appointments. *Tr.* at 37-39.

[13] Mother argues that, in making its judgment, the juvenile court failed to give any weight to certain positive evidence, including her continued visitation, regular search for extra employment, and her stable residence. *Mother's Br.* at 18. This argument is nothing more than an invitation to reweigh evidence, which we may not do. *In re D.D.,* 804 N.E.2d at 265.

[14] Father's addictions counselor testified that Father only attended six appointments out of twelve that were scheduled; that Father refused to attend Alcoholics Anonymous; that Father made only "minimal" progress on

addressing his alcohol dependence; and that during the course of treatment, the number of problems in Father's life caused by alcohol actually increased. *Tr.* at 21, 22. Father's therapist testified that Father only showed up for eight of eighteen scheduled appointments; that of the eight sessions he attended, he never stayed the full time, often leaving after just twenty to twenty-five minutes; and that when she was able to speak with Father, he would deny that he needed any help and refused to actually engage in the treatment process. *Tr.* at 21, 22, 29, 30.

[15] Similar to Mother, Father argues that the juvenile court failed to consider certain factors when it reached its decision to terminate his relationship with Child. He points out that he completed a substance abuse program while incarcerated for the events that led to Child's removal, that his incarceration prevented him from participating in the underlying CHINS proceeding, that it is unclear that Father was even aware of the CHINS proceeding, that he successfully completed probation, which demonstrated an attempt to establish a stable and appropriate life after his release from incarceration, and that he was not afforded visitation opportunities during the proceeding. *Father's Br.* at 21. Father's argument, like Mother's, is a request to reweigh the evidence, which we may not do. *In re D.D.,* 804 N.E.2d at 265.

[16] The juvenile court's termination decision was supported by clear and convincing evidence.

[17] Affirmed.

Friedlander, J., and Crone, J., concur.